UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

TYRELL SUMPTER,

Defendant.

No. 18-cr-373-6 (RJS)

TYRELL SUMPTER,

Petitioner,

-v-

UNITED STATES OF AMERICA,

Respondent.

No. 24-cv-7523 (RJS)

MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Petitioner Tyrell Sumpter, proceeding *pro se*, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence after pleading guilty to one count of possessing and using a firearm in furtherance of a drug offense, in violation of 18 U.S.C. § 924(c). (Doc. No. 1072 (the "Petition" or "Pet.").)[1] Sumpter argues that his attorney provided ineffective assistance of counsel in roughly a dozen ways and accordingly asks this Court to vacate his conviction and sentence. For the reasons set forth below, the Petition is DENIED.

## I. Background

From at least 2011 through June 2018, an organization known as the "Boss Crew" distributed significant quantities of narcotics – including crack cocaine and heroin – in the

[1] Unless otherwise specified, all record citations refer to Case No. 18-cr-373 (RJS). References to the Petition's page numbers correspond to the CM-ECF pagination, not to the Petition's own internal pagination.

Bedford–Stuyvesant neighborhood of Brooklyn. (*See* Presentence Investigation Report ("PSR") ¶ 10.) As a member of this organization, Sumpter sold drugs and, to advance the organization's objectives, carried and discharged firearms. (*See id.* ¶ 25.) A grand jury indicted Sumpter for his involvement in this drug-trafficking conspiracy, and he was subsequently arrested on June 6, 2018. (*See* Doc. Nos. 2, 246; PSR at 1.) On May 13, 2019, Sumpter pleaded guilty to count three of a superseding indictment – possessing and using a firearm in furtherance of a drug offense, in violation of 18 U.S.C. § 924(c). (*See* Doc. Entry for May 13, 2019; Doc. No. 356 ("Plea Tr.") at 46:13–15.)

Before sentencing, the Court held a two-day *Fatico* hearing, on October 8 and 19, 2021, to resolve two disputed issues of fact: (i) whether Sumpter participated alongside co-conspirator Tyshawn Burgess in a September 2016 shooting of neighborhood drug rivals (the "September 10 Shooting"); and (ii) whether Sumpter participated in putting out a hit on co-conspirator Tyquan Robinson, whom Sumpter and others suspected (incorrectly) of cooperating with law enforcement. To demonstrate Sumpter's involvement in the September 10 Shooting, the government introduced a recorded prison call in which Burgess described the shooting and implicated Sumpter. (*See* Doc. No. 883 ("Oct. 8 *Fatico* Tr.") at 32:2–34:20.) The government also proffered corroborating evidence establishing that a shooting had indeed occurred around the place and time that Burgess had stated – specifically in the early morning hours of September 10, 2016. (*See id.* at 39:18–48:19; Doc. No. 881 ("Oct. 19 *Fatico* Tr.") at 5:12–8:11.) Concluding that Burgess had no reason to lie about this event in the recorded call and noting the existence of corroborating evidence, the Court found by a preponderance of the evidence that Sumpter had been involved in the September 10 Shooting. (*See* Doc. No. 935 ("Sent'g Tr.") at 38:24–40:4.) With respect to the attempted hit on Robinson, the government produced several wiretapped phone calls. In one,

Sumpter said that he had "pressed the button" on Robinson. (*See* Oct. 8 *Fatico* Tr. at 25:10–26:2.) Based on the common-sense meaning of this phrase, the context provided by additional phone calls, and testimony from Special Agent Brittany Hill of the Bureau of Alcohol, Tobacco, Firearms and Explosives, the Court concluded by a preponderance of the evidence that "Sumpter did in fact participate in that decision to put a contract on Mr. Robinson who was wrongly believed to be a cooperator." (*See* Sent'g Tr. at 38:8–23.)

On March 1, 2022, the Court sentenced Sumpter to twelve years' imprisonment, to be followed by five years of supervised release. (*See* Doc. No. 920 at 1–3.) In imposing sentence, the Court emphasized, among other things, Sumpter's young age compared to his co-defendants, his demonstrated remorse, his steps towards and capacity for rehabilitation, and the need to avoid unwarranted sentencing disparities between defendants. (*See* Sent'g Tr. at 41:2–44:3, 55:3–11, 58:14–61:24, 64:4–15, 66:9–67:25.) But the Court also stressed the seriousness of Sumpter's crimes, the damage that they inflicted on his community, his involvement in an attempted (or at least agreed upon) hit on Robinson, and the fact that he resumed the same criminal activity for which he received a state prison sentence almost immediately after being released. (*See id.* at 65:20–67:25.) Sumpter appealed his sentence, arguing that it was both procedurally and substantively unreasonable, largely on account of the Court's factual findings following the *Fatico* hearing and the weight that it accorded those findings. The Second Circuit affirmed the conviction and sentence in all respects. *See United States v. Sumpter*, No. 22-473, 2023 WL 6532636 (2d Cir. Oct. 6, 2023). Sumpter now moves to vacate, set aside, or correct his conviction and sentence under section 2255.

## II. LEGAL STANDARD

A federal prisoner may move to vacate, set aside, or correct a sentence on the basis that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). One such rule – the mandate rule – bars petitioners from "relitigat[ing] questions [that] were raised and considered on [a previous direct] appeal." *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (internal quotation marks omitted). The complementary procedural-default rule prevents section 2255 petitioners from raising claims that *could have* been raised on direct appeal, but were not, absent a showing of cause and prejudice. *See United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).

Nevertheless, a claim that counsel provided constitutionally defective assistance provides an exception to the procedural-default rule. *See Harrington v. United States*, 689 F.3d 124, 129–30 (2d Cir. 2012); *see also Gideon v. Wainwright*, 372 U.S. 335, 339–45 (1963). To succeed on a claim of ineffective assistance of counsel, the petitioner must show that (i) counsel's representation "fell below an objective standard of reasonableness" according to "prevailing professional norms" and (ii) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). In conducting this inquiry, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. An attorney's "failure to include a meritless argument does not fall outside the wide range of

professionally competent assistance to which a defendant is entitled." *Forbes v. United States*, 574 F.3d 101, 106 (2d Cir. 2009) (alteration adopted and internal quotation marks omitted).

## III. Discussion

### A. Failure to Object to Admissibility of Burgess Call

Sumpter contends that his counsel was ineffective for not objecting to the admission of the recorded prison call in which Burgess implicated Sumpter in the September 10 Shooting. In particular, Sumpter asserts that the admission of the call violated his Sixth Amendment right to confront the witnesses against him because Burgess never appeared as a witness and thus never verified the recording's accuracy or even that his voice was on the line. (Pet. at 11–12.) Sumpter's argument, however, rests on a faulty premise. The Second Circuit has "consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings." *United States v. Martinez*, 413 F.3d 239, 242 (2d Cir. 2005). Counsel's failure to advance this meritless argument therefore cannot give rise to an ineffective-assistance claim. *See Forbes*, 574 F.3d at 106.

In his reply brief, Sumpter retreats to a more modest position, arguing that the recording was inadmissible – and that his counsel was therefore ineffective for not objecting to its admission – because the government failed to establish the identity of the speaker. (*See* Doc. No. 1094 ("Reply Br.") at 2–3.) That argument is also meritless. Any objection to the admissibility of the call was foreclosed by a stipulation between the parties that Government Exhibit 20 "is a true and accurate copy of a recording of a November [3], 2016 prison call *between Daquan Alvin*, who is incarcerated, *and Tyshawn Burgess*. Government Exhibit 20 may be received into evidence as a government exhibit at the *Fatico* hearing." (Oct. 8 *Fatico* Tr. at 32:3–7 (emphasis added).) Sumpter neither attempts to nor could establish that his counsel was ineffective for stipulating to

these facts. *See United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (explaining that "decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics and thus are virtually unchallengeable absent exceptional grounds for doing so" (citation and internal quotation marks omitted)). Indeed, "[e]xperienced defense attorneys routinely stipulate to undisputed facts in order to maintain credibility . . . when challenging other aspects of the prosecution['s] case." *United States v. Gaskin*, 364 F.3d 438, 469 (2d Cir. 2004). Sumpter's counsel likely recognized that it would have been easy for the government to establish the facts that Sumpter now argues were unproven; his counsel's decision to stipulate to those facts is well within the realm of reasonable strategy. *Id.* (explaining that "trial counsel cannot be deemed constitutionally ineffective for [strategically] stipulating"). The government accordingly had no need to prove Burgess's identity as the speaker, and Sumpter's counsel was not ineffective for declining to challenge an agreed-upon stipulation. Finally, even if Sumpter could satisfy the first element of *Strickland* – and he cannot – his argument would also fail because he cannot show that he was prejudiced by either the stipulation or his counsel's failure to object to the admission of the call. Indeed, Sumpter "does not assert that the government could not have proved that the [speaker on the call was], in fact, [Burgess]." *Id.* Thus, Sumpter's ineffective-assistance argument fails under either prong of *Strickland*.

**B. Reliance on Counsel's Promise of Shorter Sentence**

Sumpter next asserts that his counsel was ineffective for "pleading [him] out to [twelve] years, when [counsel] told [him] that he would not receive any more than [ten] years at most." (Pet. at 12.) Sumpter contends that, but for counsel's allegedly erroneous assurance of a ten-year maximum, he would have proceeded to trial and "proved his innocence before a jury and been

acquitted." (*Id.* at 13.) Sumpter's assertions, even if assumed true, fail to establish that he received ineffective assistance of counsel.

To succeed on an ineffective-assistance claim where a defendant alleges "that counsel has misled him as to the possible sentence [that] might result from a plea of guilty, the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (alteration adopted and internal quotation marks omitted). But Sumpter indisputably knew the actual sentencing possibilities that would result from his guilty plea: at his change-of-plea hearing, the Court informed Sumpter that the charge to which he intended to plead guilty "carries a maximum term of imprisonment of life." (Plea Tr. at 22:12–13.) Sumpter stated that he understood. (*See id.* at 22:22–23.) The Court then explained that "the decision as to what sentence you will receive is up to me. I'm only restricted in [that] . . . I can't go lower than [ten] and I can't go higher than life. Otherwise, it's my call." (*Id.* at 28:1–5.) Sumpter again confirmed that he understood. (*See id.* at 28:6–7.) The Court then warned that, "[n]o matter what anyone else has told you [with regard to your likely sentence], whether it's your lawyer or the government's lawyer, or anybody else, I'm not bound by that. . . . They may think that [ten] years would be appropriate. But if I think something higher is appropriate, I have to follow my own judgment." (*Id.* at 28:8–15.) Sumpter acknowledged the Court's warnings and again affirmed his understanding. (*See id.* at 28:11–12, 28:16–17.) After explaining the factors that it would consider at sentencing, the Court once more cautioned Sumpter that, "whatever sentence you receive, even if it's more than [ten] years . . . , the fact that you're unhappy with or disappointed by the sentence doesn't mean that you'll be able to withdraw your guilty plea. . . . [Y]ou are not going to be able

to say, [‘O]h, man, I didn’t expect this sentence. Let’s have a do-over.[’]” (*Id.* at 33:10–20.) Sumpter indicated that he understood. (*See id.* at 33:21–22.)

These allocution statements – made under oath – are entitled to extraordinary weight and “carr[y] such a strong presumption of accuracy” that they cannot be overcome by “later self-serving and contradictory” assertions. *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001). Accordingly, to the extent that Sumpter is arguing that he did not know his actual sentencing possibilities and would have proceeded to trial if he had, the Court is unpersuaded. *See id.* And even if his counsel had provided him with a mistaken sentencing prediction, Sumpter was expressly “aware of [the] actual sentencing possibilities” that would result from his guilty plea and has thus failed to show that he received ineffective assistance of counsel with respect to his decision to plead guilty. *Arteca*, 411 F.3d at 320; *see also United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989).

**C. Actual Innocence Claim**

Next, Sumpter argues that his counsel was ineffective for not “objecting to” his conviction for possessing and using a firearm in furtherance of a drug offense in violation of 18 U.S.C. § 924(c) because he “never committed [the offense] of discharging a firearm during and in relation to and in furtherance of a drug trafficking crime.” (Pet. at 14.) According to Sumpter’s Petition, the predicate sale of drugs occurred on a different day from the relevant shooting, making these “episodes” separate, “isolated incidents.” (*Id.*) In effect, Sumpter argues that his counsel was ineffective for not objecting to his conviction because he is actually innocent of the crime to which he pleaded guilty and was sentenced. (*See id.*; Reply Br. at 3.) But as before, this argument fails because it directly contradicts Sumpter’s sworn allocution at his change-of-plea hearing. Under oath, Sumpter stated: “In 2013, I had a dispute over the payment for drugs in relation to the

conspiracy in the indictment, and I shot a gun during the dispute, and this occurred in Brooklyn." (Plea Tr. at 39:7–10.) The Court then asked Sumpter a series of questions about whether he had fired the gun in furtherance of his drug dealing. He repeatedly confirmed that he had. (*See* Plea Tr. at 40:8–41:20). Sumpter's sworn statements suffice to defeat his ineffective-assistance argument as to this issue. *See United States v. Hernandez*, 242 F.3d 110, 114 (2d Cir. 2001) (explaining that defendant's ineffective-assistance claim "fails on the merits because his factual assertions regarding his counsel's alleged ineffectiveness simply contradict his sworn statements at the plea allocution"); *see also Garcia-Leonardo v. United States*, Nos. 10-cv-6653, 03-cr-134 (JSR), 2013 WL 6405176, at *12 (S.D.N.Y. Dec. 6, 2013) (rejecting section 2255 claim because "[p]etitioner cannot rest a claim on assertions of fact that are contradictory to the statements that he made, under oath, during his plea allocution").

**D. Sufficiency of Uncorroborated Plea**

In his reply brief, Sumpter shifts his argument slightly, asserting that his uncorroborated plea allocution is insufficient to support a conviction and that his counsel was ineffective for not objecting on that count. But while Sumpter is correct that, generally, "an accused may not be convicted on his own uncorroborated confession," *United States v. Bryce*, 208 F.3d 346, 354 (2d Cir. 1999) (internal quotation marks omitted), *as amended* (Mar. 7, 2000), a plea allocution differs entirely from an out-of-court confession. Unlike a confession, "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). Thus, "[b]y entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Id.* at 570; *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("A plea of guilty is more than a confession[,] which

admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."). In fact, when a defendant enters a guilty plea, a court "often has no actual evidence to assess." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997). That is why the Supreme Court has underscored that a defendant must be instructed in open court regarding the nature of the charge to which he intends to plea, and why a plea is voluntary only to the extent that the defendant understands the law in relation to the facts. *See Broce*, 488 U.S. at 570. Assuming those conditions are met, a defendant's plea allocution itself suffices to support a conviction. *See United States v. Andrades*, 169 F.3d 131, 136 (2d Cir. 1999); *see also Broce*, 488 U.S. at 570; *Boykin*, 395 U.S. at 242.

An out-of-court confession, by contrast, does not possess these same judicial safeguards. Therefore, the corroboration rule exists to prevent juries from convicting based on unreliable *out-of-court* statements. S*ee Opper v. United States*, 348 U.S. 84, 86, 88–89, 91–94 (1954) (emphasizing that corroboration rule applies to "extrajudicial" or "out of court" statements); *United States v. Irving*, 452 F.3d 110, 118 (2d Cir. 2006) (explaining that corroboration rule "serves a gatekeeping function in that it prevents *juries* from convicting on unreliable evidence" (emphasis added and internal quotation marks omitted)). That rule is therefore inapplicable here. Because Sumpter pleaded guilty voluntarily, under oath, and in accordance with the requirements of Federal Rule of Criminal Procedure 11, additional corroboration was not required. His counsel was not deficient for refusing to make this meritless argument. *See Forbes*, 574 F.3d at 106.

What's more, the government *did* in fact proffer corroborating evidence at Sumpter's change-of-plea hearing. When asked what evidence it would produce if the case went to trial, the government explained that it would introduce "numerous intercepted wire calls involving the defendant discussing drug deals [and] negotiating drug deals"; "numerous undercover buys with"

Sumpter "in which an undercover officer and a confidential informant purchased crack"; prison calls, including those in which Sumpter "coordinated obtaining a particular firearm that was later recovered in the investigation"; and even that particular firearm as physical evidence. (Plea Tr. at 43:18–44:4.) With respect to the discharge of a firearm, the government said it would introduce witness testimony and prison calls establishing that Sumpter committed a shooting in 2013, and that the firearm Sumpter had discussed obtaining in a recorded call was discharged. (Plea Tr. at 44:7–21.) Thus, even if the Court were to assume that Sumpter's counsel's failure to object for a lack of corroboration was constitutionally deficient, any error would have been harmless.

**E. Unknowing Guilty Plea**

Sumpter also argues that his counsel was "ineffective for failing to properly advise [him] of the elements and/or proof needed for a conviction" for the offense. (Reply Br. at 6–7.) But the transcript of Sumpter's plea allocution again forecloses this argument. At the Court's direction, the prosecutor articulated in open court each element of the offense. (Plea Tr. at 19:2–18.) And, in response to several questions from the Court, Sumpter stated that he understood what the prosecutor had said, had no questions about the elements of the offense, and *had previously discussed the elements with his lawyer*. (*See id.* at 19:20–20:2.) Because Sumpter affirmed under oath that he and his counsel had in fact discussed the specified elements of the offense, his belated contradictory and self-serving statements must be disregarded. *See Hernandez*, 242 F.3d at 114; *see also Garcia-Leonardo*, 2013 WL 6405176, at *12. Finally, even if these late-breaking assertions could overcome Sumpter's previous, sworn statements, Sumpter would be unable to show how his attorney's hypothetical failure to inform him of the elements of the offense would have prejudiced his defense or impacted his decision to plead guilty given that the Court made Sumpter fully aware of the elements required for conviction *before* accepting his guilty plea.

**F. Failure to Challenge Burgess Call**

Sumpter next asserts that his counsel was ineffective for not challenging Burgess's statements regarding Sumpter's involvement in the September 10 Shooting. (*See* Pet. at 15.)[2] According to Sumpter, the government provided "no sufficient indicia of reliability to the jail house phone call because there was no corroboration nor any reliability concerning this individual that [Burgess] was speaking to." (*Id.*) Sumpter contends that, apart from Burgess's say-so, no corroborating evidence established his involvement in the shooting, and that his "counsel was ineffective for failing to present evidence that the event . . . did not transpire as it was described by Burgess." (Reply Br. at 7.)

The record says otherwise. At sentencing, Sumpter's counsel *did* in fact argue that Burgess was lying on the phone call (*see* Sent'g Tr. at 28:24–25); that the only corroborating evidence the government offered was a witness who saw only one shooter, not two (*see id.* at 30:20–23); and that, "besides being completely contradicted by the actual evidence, there is absolutely no evidence corroborating that Sumpter was involved" (*id.* at 31:11–13). Because counsel made the very points that Sumpter accuses his counsel of failing to make, Sumpter cannot succeed on this ineffective-assistance claim. *See Khawar v. United States*, Nos. 15-cv-5784, 10-cr-1082 (TPG), 2016 WL 6270732, at *7 (S.D.N.Y. Oct. 26, 2016) (rejecting ineffective-assistance claim premised on counsel's failure to assert an argument that counsel in fact made).

To the extent that Sumpter seeks to relitigate his underlying merits argument – that Burgess's statements were either insufficiently corroborated or carried insufficient indicia of

[2] Although Sumpter styles his argument as a *corpus delicti* argument, that doctrine – which requires corroboration of certain statements – applies only to those statements made *by a defendant*. *See Irving*, 452 F.3d at 118 (explaining that, under the modern rule of *corpus delicti* – or "body of the crime" – the government "must prove that the [defendant's] confession was reliable, and must prove any elements of the crime to which the defendant did not confess"). Nonetheless, in light of Sumpter's *pro se* status, the Court will address the gravamen of Sumpter's argument – *i.e.,* that Burgess's testimony was uncorroborated. To the extent that Sumpter makes a *corpus-delicti* challenge to his own statements, the Court rejects it for the reasons explained above (*supra* III.D).

reliability – his attempt to do so is foreclosed. *See Pitcher*, 559 F.3d at 123 (explaining that defendants cannot use section 2255 petition "to relitigate questions [that] were raised and considered on direct appeal" (internal quotation marks omitted)). Sumpter's counsel made this very argument before this Court and the Second Circuit; each rejected it, finding both that Burgess's phone conversation was sufficiently corroborated, and that there was no reason to think that Burgess was fabricating the events described therein. (*See* Sent'g Tr. at 39:2–16); *Sumpter*, 2023 WL 6532636, at *2 (highlighting that, "[a]s the district court reasoned, Burgess had no incentive to lie about Sumpter's involvement in the shooting, and Burgess's statements were corroborated by evidence that a shooting had occurred around the same time and location that he described").

**G. Agent Hill's Testimony**

Sumpter further contends that his counsel was ineffective for failing to challenge the testimony of Agent Hill on the meaning of "pressed the button." (*See* Oct. 8 *Fatico* Tr. at 25:16–26:2.) According to Sumpter, his counsel should have objected that Agent Hill was not an expert witness in "Gang Terminology" or "Gang Jargon" but "testified . . . as if she [were such] an expert witness." (Pet. at 7.) Sumpter's argument, however, ignores that the Federal Rules of Evidence do not apply to sentencing hearings, *see* Fed. R. Evid. 1101(d), and that "[e]xpert testimony [at those hearings] is therefore not governed by the strictures of [Rule] 702," *United States v. Gushlak*, 728 F.3d 184, 197 n.10 (2d Cir. 2013); *see also United States v. Fell*, 360 F.3d 135, 138 (2d Cir. 2004) (explaining that Federal Rules of Evidence "are inapplicable in numerous contexts, including ordinary sentencing proceedings before a trial judge"). So long as the evidence has "sufficient indicia of reliability to support its probable accuracy," a sentencing court may consider it. *United States v. Simmons*, 164 F.3d 76, 79 (2d Cir. 1998). Thus, any objection predicated upon

Agent Hill's lack of expert admission is without merit, and Sumpter's counsel was not deficient for refraining from making it. Instead, Sumpter's counsel appropriately challenged on cross-examination the reliability and accuracy of Agent Hill's testimony, which was based on her experience investigating the case and listening to related wiretaps. (*See* Oct. 8 *Fatico* Tr. at 70:6–73:7).

Moreover, even if Sumpter could establish that his counsel's performance was deficient in this respect, he would be unable to demonstrate prejudice because both this Court and the Second Circuit held that the meaning of the phrase "pressed the button" was obvious in the context of the conversation without relying on Agent Hill's testimony. (*See* Sent'g Tr. 38:13–15 (finding that, "in context, particularly in light of the call that followed it, it's pretty obvious what is being said")); *Sumpter*, 2023 WL 6532636, at *2 ("[I]t is certainly plausible [–] and even obvious [–] that 'pressed the button' meant to put out a hit on someone or, in other words, to order him killed."). Sumpter would therefore be unable to show that the admission of this testimony affected the court's factual findings and, thus, his ultimate sentence.

### H. Evasion of Rule 16 Expert Disclosure

Sumpter next argues that his counsel was ineffective for "allowing the government to evade . . . discovery under [Federal Rule of] [C]riminal [P]rocedure . . . 16 . . . by simply calling an expert witness [*i.e.*, Agent Hill] in the disguise of a layperson." (Pet. at 19–20.) To be sure, Rule 16 imposes on the government a duty to disclose certain information to the defense, including information related to expert witnesses. Fed. R. Crim. P. 16(a)(1)(G). But Sumpter's argument is meritless because Rule 16 (a)(1)(G) does not apply to *Fatico* hearings. In fact, the Rule expressly states that the scope of its disclosure requirement is limited to "testimony that the government

intends to use *at trial . . . during its case-in-chief*, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C)." *Id.* at 16(a)(1)(G)(i) (emphasis added).

And even if the Court were to assume that Rule 16 applies in the context of sentencing, the government's disclosure duty under Rule 16 arises only "[a]t the defendant's request." Fed R. Crim. P. 16(a)(1)(G)(i). Here, Sumpter has not asserted that either he (or his counsel) submitted a Rule 16 request to the government; consequently, the government could neither violate nor evade Rule 16's expert disclosure requirement. And even if such a request *had* been made, Rule 16(a)(1)(G) applies only to testimony that the government intends to "use . . . under Federal Rule of Evidence 702, 703, or 705." Fed. R. Crim. P. 16(a)(1)(G)(i). The government, however, did not introduce Agent Hill's testimony under any of those provisions (nor did it have to) and thus was not obligated to make a disclosure under Rule 16.

Finally, Sumpter has not explained how his attorneys' failure to object to the government's supposed "evasion" of Rule 16 prejudiced him at sentencing. As previously mentioned, both this Court and the Second Circuit determined that the meaning of the phrase at issue was obvious in the context of the conversation even absent the testimony of Agent Hill.

### I. Challenge to the Reasonableness of Sentence

Sumpter also asserts that his sentence was procedurally and substantively unreasonable. (*See* Pet. at 21–23; Reply Br. at 10–12.) In particular, Sumpter points to the Court's reliance on the allegedly false and uncorroborated Burgess prison call discussed above (*see* Pet. at 21); an alleged disparity between his sentence and those of his co-defendants, as well as those of other defendants around the country with similar records convicted of similar conduct (*see id.* at 22); and the Court's supposed failure to consider Sumpter's youth before imposing sentence (*see* Reply Br. at 10–12). Each of these arguments is barred for two independent reasons.

*First*, Sumpter already challenged the procedural and substantive reasonableness of his sentence on direct appeal, relying on many of the same arguments he raises here. *See Sumpter*, 2023 WL 6532636, at *2 (rejecting Sumpter's arguments that his sentence was unreasonable because this Court either relied on the Burgess call or declined to credit Sumpter for time served on a similar state conviction). Because the Second Circuit already considered and rejected these arguments, they are procedurally barred by the mandate rule. *See Pitcher*, 559 F.3d at 123. "Simply repackaging these rejected lines of reasoning as ineffective[-]assistance claims cannot circumvent the mandate rule or entitle [Sumpter] to habeas relief." *United States v. Pierce*, Nos. 06-cr-1032, 11-cv-2526 (RJS), 2011 WL 4001071, at *4 & n.2 (S.D.N.Y. Aug. 30, 2011) (explaining that the substantive rulings of the Second Circuit would preclude any showing of prejudice).

*Second*, the procedural-default rule bars Sumpter's remaining arguments that his sentence was unreasonable. Sumpter argues that his counsel was ineffective for failing to argue that his youth warranted a downward departure and that his sentence was inappropriately high compared to those of his coconspirators. But Sumpter failed to raise either argument on appeal. *See Sumpter*, 2023 WL 6532636, at *2. And because he has established neither "cause for the procedural default and ensuing prejudice" nor "actual innocence," *Thorn*, 659 F.3d at 231; (*see also supra* III.C (rejecting actual innocence claim)), the procedural-default rule bars his reasonableness arguments.

But even if Sumpter's sentencing arguments were not barred by the procedural-default rule, they would still fail. That is because Sumpter's counsel in fact urged the Court *at sentencing* to consider Sumpter's youth and his codefendants' sentences. (*See* Sent'g Tr. at 41:2–15 (asking the Court to consider Sumpter's "youth at the time" and highlighting that "social science has shown, and your Honor has noted this, young men's brains and their judgment do[] not fully evolve until

they are [twenty-six]"); *id.* at 66:19–67:25 (considering and rejecting Sumpter's argument that the disparities between his sentence and those of his codefendants were unwarranted).)

**J. Counsel's Alleged Failure to Procure *Brady* Evidence**

Sumpter next argues that his attorney was ineffective for "not requesting *Brady* Material and . . . Discovery under Criminal Procedure Rule 11." (Pet. at 24 (italicization added)). Sumpter contends that his counsel was aware of evidence – namely a September 12, 2016 police report detailing an incident where Burgess was shot (the "September 12 Shooting") in supposed retaliation for the September 10 Shooting that he and Sumpter committed – but never sought this report from the government despite Sumpter's repeated requests for him to obtain it. (*See id.* at 15.) The parties strongly dispute whether the government ever produced the document in question. (*Compare* Reply Br. at 13 *with* Doc. No. 1092 at 8.) This factual dispute, however, is of no moment: even assuming that all of Sumpter's factual allegations were true, the Court would still reject this argument because Sumpter has not shown how his counsel's failure to obtain this information would have prejudiced him at sentencing. For Sumpter to demonstrate prejudice, he must show that, but for his counsel's supposed error, "he would have received a less severe sentence." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). But aside from Sumpter's conclusory assertions that the disputed report was "materially essential to the government's proof of its '*Corpus Delicti*'" and to "the defendant's case in order to . . . prove his innocence" (*see* Pet. at 25 (italicization added)), Sumpter's only claim of prejudice is that the report "could have possib[ly] provided sufficient evidence to attack the veracity of Burgess," whose statements the Court relied upon in finding that Sumpter participated in the September 10 Shooting. (*See* Reply Br. at 13; *see also* Pet. at 25.)

But attacking Burgess's reliability would not have changed Sumpter's sentence. Indeed, Sumpter's counsel had already stipulated that Burgess was shot on September 12 (*see* Oct. 8 *Fatico* Tr. at 48:25–49:7), and Sumpter nowhere asserts that this stipulation constituted deficient performance. At most, then, this report could have demonstrated that the September 12 Shooting happened slightly differently than how Burgess had described it. But even that would be of limited value, since Sumpter's counsel had already established Burgess's propensity for exaggeration and even lying (*see, e.g.*, Oct. 8 *Fatico* Tr. at 51:6–52:25; *see also* Sent'g Tr. at 28:24–31:15), and the Court, in turn, acknowledged that the September 10 Shooting happened "not in all respects the way [Burgess] describe[d] it in the call" (Sent'g Tr. at 39:10–11). The Court nonetheless found that Burgess's statements were sufficiently corroborated and concluded that "there is no reason to think that Mr. Burgess would make that up or lie about it." (*Id.* at 39:2–16.) More evidence of what the Court already knew would have done nothing to undermine the Court's freestanding factual conclusions. Thus, Sumpter has failed to demonstrate that this alleged deficiency of counsel would have prejudiced him at sentencing.

**K. "Constructive Amendment" of Sumpter's Guilty Plea**

Finally, Sumpter argues that his counsel was ineffective for failing to challenge what he labels a constructive amendment of his plea. In particular, Sumpter contends that, while he pleaded guilty to discharging a firearm "during and in relation to" a drug-trafficking crime, the Court ultimately sentenced him for discharging the firearm "in furtherance of" that crime. (*See* Pet. at 26; Reply Br. at 13.) The Court is not persuaded.

To begin, Sumpter is correct that 18 U.S.C. § 924(c) provides for two distinct theories of liability. *See* 18 U.S.C. § 924(c)(1)(A) (proscribing the use or carriage of a firearm "during and in relation to any . . . drug trafficking crime" *or* the possession of a firearm "in furtherance of any

such crime"). But Count Three of the superseding indictment charged Sumpter with a violation of section 924(c) premised on *both* theories of liability. (*See* Doc. No. 246 at 4.) And Sumpter's plea allocution was sufficient to support a conviction under either theory. (S*ee* Plea Tr. at 39:7–41:20.) The Court accordingly stated without qualification that, "because you acknowledge you're guilty *as charged in Count Three* of the superseding indictment . . . , I accept your guilty plea[,] and I adjudge you guilty on Count Three of the superseding indictment." (*See id.* at 46:16–23 (emphasis added).) Thus, when the Court ultimately sentenced Sumpter for possession of a firearm in furtherance of a drug crime, it did not "constructively amend" the offense to which Sumpter had pleaded guilty, given that his plea to Count Three was to *both* theories of liability. Any objection by counsel at this point would have been without merit, and his counsel's failure to make it therefore does not constitute deficient performance.

Relatedly, Sumpter flags a typographical error in the PSR, which incorrectly states that the predicate offense for his section 924(c) conviction was a crime of violence rather than a drug crime. (*See* Pet. at 26; *see also* PSR at 1.) But regardless of that error and counsel's alleged failure to object to it prior to sentencing, the record is clear that Sumpter's sentence on the section 924(c) violation was predicated on a drug crime, not on a crime of violence. *See Gonzalez*, 722 F.3d at 130 (requiring petitioner to show that the outcome of the proceeding – here, the sentencing – would have been different but for the supposed deficiency). As a result, there could have been no prejudice that flowed from counsel's asserted failure to object to that portion of the PSR.

## IV. Request for Evidentiary Hearing

Although Sumpter asks this Court to hold an evidentiary hearing (*see* Pet. at 13, 15, 16, 18), a district court need not hold an evidentiary hearing on a section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."

28 U.S.C. § 2255(b); *see also Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (explaining that petitioner is entitled to hearing only if he can show "a plausible claim of ineffective assistance of counsel" (internal quotation marks omitted)); *Rosa v. United States*, 170 F. Supp. 2d 388, 398 (S.D.N.Y. 2001) (concluding that a hearing is not necessary where "the allegations of the motion, accepted as true, would not entitle the petitioner to relief"). As explained, Sumpter's arguments are meritless even if all disputed issued of fact were to be resolved in his favor. His request for a hearing is therefore DENIED.

## V. CONCLUSION

For the foregoing reasons, Sumpter's Petition under section 2255 is DENIED. Because Sumpter has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and therefore Sumpter may not proceed *in forma pauperis*, *see Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to terminate the motions pending at Doc. No. 1072 in Case No. 18-cr-373 and Doc. No. 1 in Case No. 24-cv-7523; to close Case No. 24-cv-7523; and to mail a copy of this Memorandum and Order to Sumpter.

SO ORDERED.

Dated: August 18, 2026
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation